## Richmond.

MARSHALL.V. SEARS' EX'OR AND ALS.

April 17, 1884.

1. HOMESTEAD EXEMPTION.—Where there is a fraudulent conveyance of property, which is subsequently annulled at the suit of the creditor, the grantor is not estopped as against the creditor to assert his right of homestead in the premises.

2. APPROVED.—*Shipe, Cloud & Co.* v. *Repass and als.,* 28 Gratt. 716, and *Boynton* v. *McNeals,* 31 Gratt. 436, examined and approved.

Appeal from decrees of circuit court of Northampton county, entered April 13th and June 20th, respectively, in the causes of *Edward Sears' Executor* v. *Wm. J. Marshall and Samuel A. Lewis,* and of *Sears' Executor* v. *L. J. Nottingham, Sheriff, &c.,* heard together. Opinion states the facts.

*Joseph Christian,* for the appellant.

*Gunter & Gillett,* for the appellees.

HINTON, J., delivered the opinion of the court:

In the year 1875, Charles E. Sears and Virgil C. Sears, executors of Edward Sears, deceased, filed their bill in the circuit court of the county of Northampton, seeking to set aside four several bills of sale executed by William J. Marshall to Samuel A. Lewis, and thereupon such proceedings were had that, at February term, 1877, a decree was rendered declaring the said bills of sale fraudulent and void, and directing Leonard J. Not-

tingham, sheriff of the county, to take possession of and sell the four vessels named in the pretended bills of sale. During the progress of the cause the court awarded an issue, to be tried by a jury, to ascertain what amount of money, if any, had been paid by the defendant, Lewis, to Marshall, for these vessels. Upon the trial of that issue, two bills of exceptions were taken by the defendant, Marshall, but as they have been abandoned by his counsel in this court, they will not be set out or noticed.

At April term, 1877, of the court, the same Charles E. Sears, as surviving executor of the said Edward Sears, filed another bill, in which he set out the institution of the former suit, the rendition of the decree for the sale of the vessels, and the seizure of the two vessels or sloops, named in the decree, by the sheriff. The bill then goes on to allege that Marshall has claimed these two vessels, in the mode prescribed by law, as exempt to him under the homestead law of the state. It also alleges the refusal of the sheriff to sell unless indemnified, and concludes by asking that the claim of Marshall to have set aside these vessels as exempt to him may be determined, and that appropriate injunctions may be awarded.

On the 20th day of June, 1877, by consent of parties, these two causes came on to be heard together, and Marshall moved to dissolve the injunction awarded in the last mentioned suit of *Sears' Ex'or,* v. *L. J. Nottingham, Sheriff, &c.*

The court, by its decree of that day, refused to dissolve, and perpetuated the injunction, and ordered the sheriff to pay over to the executor of Edward Sears $250 in money, and the bond of one D. T. Richter, which had come into his hands as the proceeds of the sale of these two vessels (which had been in the meanwhile sold), as well as the further sum of $1,556.56, which he had received from the proceeds of the sale of the other two under an order of the United States district court in the city of Baltimore, and removed the cause from the docket.

The only question, therefore, involved upon this appeal is the right of a fraudulent grantor, when his conveyance has been set

aside, to assert his claim of homestead in the property embraced in the deed. And as this point has been twice passed upon by this court, we are saved the necessity of making any elaborate review of the cases, or of the reasons upon which they are founded. In the case of *Shipe, Cloud & Co.* v. *Repass and als.*, 28 Gratt. 729, Judge Staples, speaking for a majority of the members of the court then sitting, says: "In Smyth on Homestead and Exemption, section 469, it is said, 'the general rule seems to be, the fraudulent conveyance of the homestead by a bankrupt does not estop him from claiming such homestead in the premises after the conveyance has been annulled and decreed as fraudulent and void as to creditors.'" And after quoting decisions from other states to the same effect, that learned judge proceeds as follows: "It must be borne in mind, however, this is a controversy between the creditors on the one hand, and the debtor and fraudulent alienee on the other. What are the rights of the former in such a controversy? Simply to have the deed annulled; to be placed precisely in the same position they occupied before. Can they claim more? If the debtor has a valid claim to the homestead as against them, before the execution of the deed, how is their condition improved by the deed? Their judgments are only a lien upon the property of the debtor. It is not competent for them, while selling that property, to insist it is not the debtor's property. The validity of the fraudulent conveyance as between the parties is no concern of the creditors. All they can claim is, that as against them it can confer no rights upon any one. If any one can set up the estoppel it would seem to be the fraudulent grantee. But in this case he asserts no such claim. But the creditors, through him, seek to appropriate that the law does not allow them, nor the deed confer upon them. If the debtor makes a fraudulent conveyance of property in which he has a right of homestead under the constitution, what is it to the cred itors so far as the homestead is concerned? When the conveyance is annulled, and they are restored to their own, they have obtained all they can justly claim. They cannot be heard in

one breath to say that the conveyance is a nullity as to them, and in the next to assert it confers upon them new rights because it is valid between the parties." And he comes to the conclusion that where there is fraudulent conveyance of property, which is subsequently annulled at the suit of the creditor, the grantor is not estopped as against the creditor to assert his right of homestead in the premises.

In *Boynton & als.* v. *McNeal & als.*, 31 Gratt. 459, the same learned judge, speaking for a majority of the whole court, after a careful reëxamination of the whole subject, announces the same doctrine, and quotes from Thompson in his book on Homesteads and Exemptions, who gives as the reasons for the rule, to be deduced from the cases: First. That the homestead privilege is created for the benefit of the wife and children, as well as that of the husband and father, and therefore it is not right that the former should be prejudiced by the wrongful act of the latter; and second, that the conveyance being void as to creditors, it stands as to them as though it had never been made. Without undertaking to multiply authorities, or to prolong the discussion, we may say that the rule, and the reasons for it, heartily commend themselves to our approval, and are in accord with the humane policy of the homestead act, which seeks to protect the family of the debtor from the inhumanity which would deprive its weak and dependent members of a shelter. And it cannot be said with propriety that the application of this rule will work a fraud upon creditors, for no creditor can be in any wise injured, in legal contemplation, by any dealing of the debtor with property which the law has removed, or, what amounts to the same thing, has authorized the debtor to remove beyond his reach. *Sears et als.* v. *Hanks et als.*, 14 Ohio St. R. 298; *Cox* v. *Wilder*, 2 Dill. R. 45; *Crummen* v. *Bennet et al.*, 68 N. C. R. 494.

It follows that so much of the decrees of the circuit court of Northampton county, complained of, as are in conflict with the views herein expressed are erroneous, and must be reversed

and annulled, and that the residue thereof ought to be affirmed, and the causes must be remanded for further proceedings to a final decree in conformity with the foregoing opinion.

The decree was as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that the appellant, William J. Marshall, is not estopped to assert his claim to the $1,035, the proceeds of the sale of the two sloops, "Right Bower" and "Uncle Jeff," and to so much of the proceeds of the sale of the sloop "Ann Cooley," as may be necessary to make up, with what has heretofore been claimed and set apart to him, his exemption of $2,000, under the homestead law of Virginia, by reason of anything contained in the bills of sale dated July 14th, 1873; and that the said court of Northampton county erred in so deciding.

It is therefore decreed and ordered that for this error so much of the decrees appealed from, as are in conflict with this claim, be reversed and annulled, and that the appellees pay to the appellant his costs by him expended in the prosecution of his said appeal and *supersedeas* here.

And that these causes be remanded to the said circuit court with instructions to assign to the appellant the said sum of $1,035, the proceeds of the sale of the sloops, "Right Bower" and "Uncle Jeff," and so much of the proceeds of the sale of the sloop "Ann Cooley," as may be sufficient with the amount heretofore claimed by the appellant to make his homestead exemption of two thousand dollars, unless it appears that he is not entitled to the same upon other grounds.

Which is ordered to be certified, &c.

DECREE REVERSED.