**In re Lewis Edmund SHERMAN, Caroline Smith Sherman, Debtors.**

**Bankruptcy No. 93–24564–T.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

July 10, 1995.

---

Dean W. Sword, Jr., Portsmouth, Virginia, as Chapter 7 Trustee.

James T. Lloyd, Jr., Clark & Stant, P.C., Virginia Beach, Virginia, for debtors.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the trustee's objection to the debtors' claimed exemption—or, more precisely, to the *increase* in the amount of the debtors' claimed exemption—in certain shares of stock in a closely-held business. A hearing was held on June 15, 1995, at which time the court took the matter under advisement. This opinion constitutes the court's findings of facts and conclusions of law as required by Fed. R.Bankr.P. 7052.

### Findings of Fact

The relevant facts (other than the ultimate issue of whether the debtors have acted in bad faith) are not in dispute. On September 8, 1993, the debtors filed a joint voluntary petition under chapter 7 of the Bankruptcy Code in this court. Dean W. Sword, Jr. was appointed as the trustee. On their schedules, the debtors claimed as exempt, under the Virginia homestead exemption, Va.Code Ann. § 34-4, their 65% interest, valued at $100.00, in Aarow [*sic*] Temporary Services, Inc. The first meeting of creditors under Section 341 of the Bankruptcy Code was held on October 13, 1994. At the meeting, the debtors provided the trustee with a current balance sheet for the business reflecting total assets of $216,486.00, total liabilities of $227,-635.00, and total shareholder equity of negative $11,149.00. The trustee subsequently filed a "no asset" report, the debtors received their discharge on January 3, 1994, and the case was closed on January 18, 1994.

The trustee was subsequently approached by a potential purchaser who offered the trustee $5,700.00 for the debtors' stock in Aarow Temporary Services, Inc. The trustee filed a motion on August 19, 1994, to reopen the debtors' case for the purpose of administering the debtors' stock. The debtors vigorously opposed the motion, but on January 3, 1995, Judge Tice of this court overruled the objection and allowed the case to be reopened. The debtors filed a timely appeal to the United States District Court. The appeal was dismissed on March 6, 1995, on the debtors' motion. According to debtors' counsel, the appeal was dismissed "based on the costs of the appeal and potential subsequent actions which could occur after the appeal." On March 9, 1995, the debtors filed an amendment to their Schedule C increasing the amount of the claimed exemption in the Aarow Temporary Services, Inc. stock to $6,901.70, the full remaining amount of their combined $10,000.00 homestead exemption, and on March 10, 1995, they recorded an amended homestead deed reflecting the same increase.[1] Debtors' counsel candidly admits that the reason he did not raise the possibility of the debtors claiming an increased exemption amount in response to the trustee's motion to reopen the case was for "tactical" reasons, namely to avoid a "bidding war" with the potential purchaser. On March 30, 1995, the trustee filed the objection that is currently before the court.

### Conclusions of Law

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The trustee's objection, which was filed within 30 days of the filing of the amended Schedule C, is timely.

The trustee's argument, stripped to its essentials, is that the debtors, by waiting until after the trustee had incurred significant expense litigating the hotly-defended motion to reopen the case before attempting to increase the amount of their claimed exemption

---

1. The trustee does not dispute that the stock is jointly owned and does not contend that the $6,901.70 exemption amount exceeds that to which the debtors are otherwise legally entitled.

in the stock, are guilty of bad faith and laches. He requests that the exemption be disallowed, or, in the alternative, that the debtors be required to pay his reasonable attorneys fees and costs.[2]

The procedure for claiming exemptions is governed by Fed.R.Bankr.P. 4003:

> (a) Claim of Exemptions. A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007.
> * * *
> (b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) *or the filing of any amendment to the list* or supplemental schedules, unless, within such period, further time is granted by the court. * * *

(emphasis added). While the rule clearly recognizes a right on the part of the debtor to amend the list of exempt property, it does not address the extent to which such right may be limited. However, Fed.R.Bankr.P. 1009 ("Amendments of Voluntary Petitions, Lists, Schedules and Statements") provides as follows:

> (a) General Right to Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall *give notice of the amendment to the trustee and to any entity affected thereby.*

The Fourth Circuit, construing the essentially identical language of former Bankruptcy Rule 110, held in the case of *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977 (4th Cir.1984), that "[u]nder a plain reading of [the rule], a court ordinarily does not have discretion to deny leave to amend or to require a showing of good cause." *Id.* at 978. The Court did note, however, "that exceptional circumstances may prevent the debtor

in bankruptcy from amending his petition or schedules." *Id.* at 979. In *Tignor*, the debtor had originally listed a personal injury claim on his schedule of assets and showed the value as "unknown" but did not claim any portion as exempt. The debtor settled the claim approximately eight months after the meeting of creditors for $150,000.00 and then four months later amended his schedule of assets to reflect the amount of the settlement and his schedule of exempt property to claim the entire amount as exempt. As here, the trustee objected on the ground that the claim of exemption came too late, particularly as he had incurred legal fees and costs to secure the proceeds of the claim for the bankruptcy estate. The Court, however, concluded,

> No exceptional circumstances are present here which warrant denial of the debtor's amendment. The trustee may not successfully claim detrimental reliance simply because a schedule that could be amended was in fact amended, nor may he claim laches simply because of the passage of time between the petition or the creditors' meeting and the amendment.

*Id.* Although ruling in favor of the debtor's right to amend his schedule of exemptions to list the personal property claim, the Court then went on to hold that Virginia law did not provide a separate exemption for unliquidated personal injury proceeds and remanded the case to the District Court "with instructions that the debtor be allowed to claim as exempt his claim for bodily injuries under the Virginia homestead exemption statute * * *." *Id.* at 982.[3]

Virginia law permits a "householder" to exempt from creditor process up to $5,000.00 worth of real or personal property.[4] Va. Code Ann. §§ 34–4 and 34–13. This is commonly referred to as the "homestead" exemption. At least in the bankruptcy context, both husband and wife may each qualify as a "householder" and may therefore each claim

---

**2.** The trustee estimated his attorneys fees at approximately $900.00. In addition, costs in the amount of the $120.00 filing fee (advanced by the potential purchaser) have been incurred.

**3.** This aspect of *Tignor* was effectively overruled in 1990 by Va.Code.Ann. § 34–28.1, which exempts from creditor process "all causes of action for personal injury or wrongful death."

**4.** The exemption is increased by $500.00 for each dependent under 19 years of age. Also, a disabled veteran may claim an additional $2,000.00 exemption. Va.Code Ann. § 34–4.1.

a $5,000.00 exemption. *Cheeseman v. Nachman (In re Cheeseman),* 656 F.2d 60 (4th Cir.1981). In order to perfect the exemption, a homestead deed identifying the property set apart as exempt must be recorded, in the case of real estate, in the city or county where the property lies, or, in the case of personal property, in the city or county where the debtor resides. Va.Code Ann. §§ 34–6 and 34–14. Although § 34–21, Va. Code Ann., as amended in 1991, seemingly bars a debtor who has "once set apart" real or personal property as exempt from "afterwards [being] entitled to the exemption of any estate other than that so set apart," case law has long permitted a debtor who has filed a timely homestead deed to amend the value of an item of property already listed, *In re Waltrip,* 260 F.Supp. 448 (E.D.Va. 1966); to correct the description of an exempted asset, *Shirkey v. Leake,* 715 F.2d 859 (4th Cir.1983) (homestead deed could be corrected to change description from "1978 income tax refunds" to "1980 income tax refunds"; or, at least in some cases, to add an asset that was not in existence when the original homestead deed was recorded), *In re Custis,* 87 B.R. 415 (Bankr.E.D.Va.1988) (life insurance proceeds paid to debtor after bankruptcy case filed). *But see, In re Emerson,* 129 B.R. 82 (Bankr.W.D.Va.1991), *aff'd* 962 F.2d 6 (4th Cir.1992) (homestead deed cannot be amended to decrease value of listed property in order to add other property not previously listed, where the property was owned by the debtor at the time the original deed was filed).

Although *Waltrip, Shirkey* and *Custis* were all decided prior to the 1991 amendment to § 34–21, the continuing vitality of *Waltrip* was assumed in *Addison v. Reavis,* 158 B.R. 53 (E.D.Va.1993), decided subsequent to the 1991 amendment. In that opinion, the District Court noted a long-standing Virginia practice of claiming only a nominal (typically $1.00 or $10.00) value for assets claimed exempt and of amending the exemption upwards "if and when the bankruptcy court determines that a higher value is more appropriate." 158 B.R. at 56. The opinion in *Addison,* by holding that the debtor's exemption in that case in certain limited partnerships was limited to the $1.00 claimed value unless the debtor "amend[s] the value stated for those interests, within the $5,000 total homestead allowance," 158 B.R. at 58, implicitly approved the practice of a debtor increasing the valuation of an asset claimed exempt on a homestead deed after a trustee has moved to administer it.

Applying the foregoing principles to the present case, it is apparent that the debtors have done no more than avail themselves of their right under *Waltrip* and *Addison* to amend upward—to the extent of the unused amount of their homestead exemption—the value of their stock interest in Aarow Temporaries, Inc. Although the trustee complains that they should have moved to do so before he incurred substantial legal fees in litigating his motion to reopen the case, by the same token the trustee should have been aware from the outset of the possibility that the debtors might do what the case law in this District explicitly holds they have a right to do. In addition, until the case was actually reopened, the debtors could not, as a technical matter, have amended their schedule of exempt property, since Fed.R.Bankr.P. 1009(a) does not permit amendment of schedules in a closed case. While, therefore, the debtors' actions in deliberately not apprising the trustee—for what they perceived to be "tactical" reasons—that they intended to amend their exemptions upward if they were unsuccessful in resisting the motion to reopen the case is hardly to be commended, the court cannot conclude that simply holding one's cards close to the vest rises to the level of bad faith. As in *Tignor,* the trustee "may not successfully claim detrimental reliance simply because a schedule that could be amended was in fact amended, nor may he claim laches simply because of the passage of time between the petition * * * and the amendment." 729 F.2d at 979. Accordingly, no sufficient grounds have been shown to prohibit the debtors from amending their schedule of exempt property, for disallowing the claimed increase in the amount of the exemptions, or for conditioning the amendment on the payment of the trustee's fees

incurred in moving to reopen the case.[5] Nothing in this opinion is intended to preclude the trustee from selling the debtors' stock interest in Aarow Temporary Services, Inc. if a purchaser is willing to pay an amount for the stock that exceeds the $6,901.70 amount that the debtors have claimed exempt.

An order will be entered consistent with this opinion overruling the trustee's objection to the debtors' amended exemptions.

---

**5.** Whether the debtors' opposition to the trustee's motion to reopen the case was unjustified or otherwise sanctionable under Fed.R.Bankr.P. 9011 is an issue not presented by the present motion, and the court explicitly makes no ruling on that point.