**In re Alan E. LEDIS, Debtor**

**No. 97–44300 JBR.**

United States District Court,
D. Massachusetts.

March 8, 2001.

stein *(In re Weinstein),* 164 F.3d 677 (1st Cir. 1999), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999).

10. *See* n. 3, *supra.*

Steven A. Kressler, Worcester, for Alan E. Ledis, Debtor.

Phillip M. Stone, Worcester, for Cheryl L. Heins.

### DECISION AND ORDER ON MOTION OF CHERYL HEINS FOR RELIEF FROM AUTOMATIC STAY AND CROSS MOTIONS FOR SUMMARY JUDGMENT

JOEL B. ROSENTHAL, Bankruptcy Judge.

The matter came before the Court on the motion of creditor Cheryl Heins for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).[1] Both Heins and Alan Ledis ("the Debtor") moved for summary judgment, and the Court set the matter for hearing on the cross-motions and, in the alternative, to take evidence. The Court heard the parties on summary judgment, reserved ruling on those motions, and conducted an evidentiary hearing. In this contested matter, the latest chapter in the acrimonious saga between the Debtor and Heins, the parties ask the Court to decide whether Heins is entitled to relief from the automatic stay so she may pursue what she asserts is her collateral. For the reasons set forth herein, the Court grants Heins' summary judgment motion.

### I. Procedural History

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("the Code") on June 19, 1997 ("the Petition Date"). The Debtor scheduled Heins' claim as a disputed, non-priority unsecured claim. The Debtor also scheduled miscellaneous veterinary equipment and supplies valued at $8,000.00, accounts receivable—characterized as uncollectible—worth $5,700.00, and $50.00 in his checking account. The Debtor scheduled no inventory.

Heins initiated an adversary proceeding against the Debtor (AP # 97–4321–JFQ)

---

1. Heins also sought *ex parte* relief under 11 U.S.C. § 362(f). However, the Court implicitly denied that relief when it granted Heins an expedited hearing.

under § 523(a) of the Code seeking to have her claim declared secured and non-dischargeable. After a summary judgment hearing before the Honorable James F. Queenan, Jr., Heins was awarded partial summary judgment, allowing, *inter alia*, a secured $25,000.00 claim, with 6% interest, collateralized by the Debtor's veterinary equipment as described in her filed financing statements. The Debtor soon converted the case to Chapter 13. In March 1999, the Debtor filed a Chapter 13 Plan and updated schedules listing Heins' $28,625.00 claim as being secured by only $8,000.00 worth of miscellaneous veterinary equipment and supplies. The Debtor's updated Schedule B remained essentially unchanged. Heins filed an amended proof of claim in the amount of $28,947.88, to which no party objected. The Court has not confirmed the Debtor's Chapter 13 plan.

Heins filed a motion for relief from the automatic stay for cause and a motion for summary judgement on the same on January 3, 2000 and March 9, 2000, respectively. The Debtor opposed both motions and also moved for summary judgment. These are the motions before the Court.

## II. Findings of Fact

Based on the record before the Court,[2] the Court makes the following findings of fact. Fed. R. Bankr.P. 9014; Fed. R. Bankr.P. 7052; Fed.R.Civ.P. 52(a). The Debtor is a veterinarian who owns and operates a veterinary hospital ("the Practice"). Heins is the Debtor's ex-wife. At the outset of this case, the Debtor operated the Practice on Everett Street in Southbridge, Massachusetts ("Everett Street"). Sometime prior to November 19, 1999 the Debtor relocated the Practice to 100 Central Street in Southbridge ("Central Street"). The Debtor continues his Practice at Central Street where he keeps the instruments, equipment, and inventory of his profession.

Heins holds a secured judgment claim against the Debtor in the present amount of $29,775.34. Adopting the most optimistic valuation of the collateral in the record, Heins' claim is undersecured. Furthermore, nothing in the record suggests the Debtor ever made regular post-petition payments to Heins to mitigate her undersecured status. As such, the Court finds, without deciding to what extent, that Heins' claim is undersecured, and that the Debtor has not made a good faith post-petition effort to pay Heins' claim.

On January 17, 1995 ("the UCC Filing Date"), Heins filed a financing statement ("the UCC–1"), signed by the Debtor, perfecting her security interest in, among other items, all the Debtor's inventory, equipment, instruments, machinery, fixtures, and utensils at Everett Street or wherever else located. A collateral listing was attached to the UCC–1 as "Schedule A." In

**2.** At trial, Debtor's counsel objected to photographs offered by Heins to prove what collateral the Debtor had at his veterinary clinic, and the Court reserved judgment on the objection. The gravamen of the objection was that post-petition photographs were irrelevant because they did not prove what of the photographed property the Debtor owned on the date of his bankruptcy petition. As the photographs could make no temporal distinction amongst the photographed property, the Debtor argued, they have no relevance. In federal courts, "relevant evidence" is defined broadly to include "evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401 (emphasis added); *see Blancha v. Ray-mark Indus.,* 972 F.2d 507, 514 (3d Cir.1992). Where a trial judge deems evidence relevant, that evidence is admissible. Fed.R.Evid. 402; *see Blancha,* 972 F.2d at 514. In this case, the photographs did not prove what collateral Heins had as of the Debtor's bankruptcy filing, but they did tend to prove what collateral the Debtor still had at the time of the photographs. As the Court must decide what collateral Heins may pursue, the Court is within its prerogative to consider the photographs in making this decision. *See Iacobucci v. Boulter,* 193 F.3d 14, 20 (1st Cir.1999). In any event, the Court's grant of summary judgment is based only on the summary judgment record, and the Court considered the admitted evidence only to decide what made up Heins' collateral.

granting Heins summary judgment, Judge Queenan ruled Heins' claim is "secured by the equipment of the [Debtor's] veterinary practice as described in the [UCC-1]," and this Court is bound by that Order. The UCC-1 contains a "dragnet" clause, collateralizing, in addition to property on Schedule A, all substitutions, additions to, and any proceeds received by the Debtor on disposition of any collateral. As the Debtor signed the UCC-1, and the parties jointly submitted a copy of the same to the Court, I find Heins held on the UCC Filing Date a valid perfected security interest in the collateral listed on the UCC-1.

In addition to the above collateral, the agreed upon record indicates the Debtor acquired other collateral after the UCC Filing Date and prior to the Petition Date. The summary judgment record, though, does not allow the Court to precisely decide what these additions were. The Court deals with that matter below. The record is, nonetheless, sufficient to suggest that the Debtor added to Heins' collateral prior to the Petition Date. In addition to proving creation of new collateral, jointly filed inventories of the Debtor's Practice showed the Debtor still possessed a large majority of the collateral shown on the UCC-1 even after the Petition Date, and furthermore that the Debtor continues in possession of that collateral. When the Debtor moved the Practice from Everett Street to Central Street, he also relocated some of the collateral there, and surrendered some collateral to Heins which he left at Everett Street. In addition to collateral relocated to Central Street, there is also some collateral the whereabouts of which is unknown. Based on the exhibits filed with the Court, and Heins' uncontroverted testimony regarding her sale of the surrendered collateral, I find the surrendered collateral had a value of $3,500.00.

### III. The Summary Judgment Motions

The parties each seek summary judgment on Heins' motion for relief from the automatic stay. Fed. R. Bankr.P. 9014;

Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(c); MLBR 7056-1. Under Rule 56(c) of the Federal Rules of Civil Procedure, applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court grants summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(c); *see Feliciano v. State of R.I.*, 160 F.3d 780, 788 (1st Cir.1998). The Supreme Court has stated that summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Weiss v. People Sav. Bank (In re Three Partners, Inc.)*, 199 B.R. 230, 235 (Bankr.D.Mass.1995).

In this case, Heins is entitled to summary judgment because the Debtor conceded material undisputed facts sufficient to satisfy this Court she is entitled to relief from the automatic stay "for cause" as a matter of law. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Three Partners*, 199 B.R. at 235. In an action under § 362(d)(1), the Code clearly allocates the burdens of proof: The party seeking relief from the automatic stay bears the burden of proof as to the debtor's equity in the collateral, 11 U.S.C. § 362(g)(1), and the opposing party bears the burden of proof as to all other issues in the matter, 11 U.S.C. § 362(g)(2). Thus, as to the allegation she is not adequately protected, Heins bears the burden of proving the Debtor has no equity in the collateral, and the

Debtor bears the burden of proving that no cause exists for granting Heins relief. In addition to the Debtor's burden of proof under § 362(g)(2), the Debtor may also be obliged to rebut Heins' proof on the issue of his equity in the collateral in order to defeat Heins' claim for relief.

In an Agreed Upon Statement of Facts ("the Statement"), the Debtor conceded Heins has a $29,775.34 claim that is at least partially secured by property inventoried in an August 26, 1999 appraisal ("the Appraisal") attached as an exhibit. The Debtor also admitted he relocated some of Heins' collateral when he moved from Everett Street to Central Street. The Debtor further agreed his property valued in the Appraisal, some of which he left at Everett Street and some of which he took to Central Street, has a value less than the amount of Heins' claim. Therefore, the Debtor effectively concedes he has no equity in the collateral. The Court thus finds Heins satisfied her burden of proof on the issue of the Debtor's equity in the collateral on the UCC–1, most of which is also listed in the Appraisal.

Given Heins satisfied her burden of proof, 11 U.S.C. § 362(g)(1), it is incumbent on the Debtor to prove Heins' security interest is otherwise adequately protected. 11 U.S.C. § 362(g)(2); *see First Agric. Bank v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc.)*, 46 B.R. 892, 900 (Bankr.D.Mass. 1985). Aside from the Debtor's denial in his opposition to Heins' § 362(d) motion that Heins is not adequately protected, the Debtor has not otherwise refuted Heins' claim for relief. In the face of Heins' summary judgment motion, the Debtor must come forward with more than a mere denial in his pleadings, *see Three Partners, Inc.*, 199 B.R. at 235 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), but

rather he "must set forth specific facts showing that there is a genuine issue for trial." *Id.* The Debtor has failed to do this, instead focusing his somewhat misguided efforts on attempting to persuade the Court he surrendered all the collateral at Everett Street, all the while conceding he moved at least some collateral to Central Street. As the Debtor made no attempt to persuade the Court he has in some way adequately protected Heins' security interest, the Court must find the Debtor has failed to meet his burden of proof.[3]

■ Having decided the Debtor completely failed to make a required showing as to an essential element of his defense, the Court turns now to decide whether, based on the facts established by the summary judgment record, Heins is entitled to relief from the automatic stay as a matter of law. The Court finds she is. In deciding whether to grant relief from the automatic stay, other bankruptcy courts in this District have held that a secured creditor is adequately protected so long as the value of that creditor's collateral equals or exceeds the value of the claim the collateral secures. *See In re Chauncy St. Assoc. Ltd. P'ship*, 107 B.R. 7, 8 (Bankr.D.Mass. 1989); *In re Lane*, 108 B.R. 6, 11 (Bankr. D.Mass.1989). Conversely, those same courts have implied that an absence of a debtor's equity in collateral without some other form of adequate protection, *see e.g.*, 11 U.S.C. § 361, can, in and of itself, constitute a basis for granting relief from the automatic stay "for cause" under § 362(d)(1). *See Chauncy St.*, 107 B.R. at 8; *Lane*, 108 B.R. at 11. Today, I follow the reasoning of those courts and hold that Heins is entitled to relief as a matter of law because she has shown her security interest in the collateral is not adequately protected insomuch as her claim exceeds

---

**3.** In her motion, Heins also sought relief for cause for the Debtor's failure to make payments, and the Debtor's alleged efforts to conceal her collateral. While the Court could reasonably infer from the record facts suffi-

cient to establish "cause" for those allegations, the Court, having granted summary judgment for lack of adequate protection, refrains from protracted discussion on Heins' other assertions of "cause" under § 362(d)(1).

the value of the collateral and the Debtor has not offered some other form of adequate protection. Therefore, the Court grants Heins' summary judgment motion seeking relief from the automatic stay for cause pursuant to § 362(d)(1) of the Code.

## IV. The Scope of the Relief Granted

Having decided Heins is entitled to relief from the automatic stay to pursue her collateral, the Court must decide what collateral she may pursue. The Debtor, shielding himself only with § 552(a) of the Code, has defended entirely on the assertion he surrendered all Heins' collateral and her remaining claim is consequently unsecured. Heins seeks to pierce that shield with the sole exception to § 552(a) by alleging her security interest extends to all the Debtor's post-petition property described by the UCC–1. After consideration of the parties' legal arguments, and the controlling federal and state law, the Court concludes this is an instance when the party correctly asserting the state of the law does not necessarily prevail.

### A. The 11 U.S.C. § 552 Issues

Section 552 of the Code governs attachment of pre-petition security interests to post-petition property that would otherwise become collateral upon the debtor acquiring rights in the collateral absent the debtor's bankruptcy.[4] Under § 552(a), no pre-petition security interest with an after acquired property provision attaches to a debtor's post-petition property. 11 U.S.C. § 552(a); see N.H. Bus. Dev. Corp.

v. Cross Baking Co., Inc. (In re Cross Baking Co., Inc.), 818 F.2d 1027, 1029 (1st Cir.1987); Three Partners, Inc., 199 B.R. at 238; Wilke Truck Serv., Inc. v. Wiegmann (In re Wiegmann), 95 B.R. 90, 91–92 (Bankr.S.D.Ill.1989); see also William L. Norton, Jr., et al., Norton Bankruptcy Law and Practice 2d, § 62:2 (1997).

Section 552(b), though, states the exception to this general rule. In addition to other forms of collateral not pertinent to this case, § 552(b)(1) provides that a pre-petition security interest does attach to post-petition proceeds derived from pre-petition collateral, notwithstanding § 552(a), only if that pre-petition security interest would have attached to those proceeds pursuant to applicable non-bankruptcy law. 11 U.S.C. § 552(b)(1); see In re Mintz, 192 B.R. 313, 318–19 (Bankr. D.Mass.1996). Additionally, § 552(b)(1) grants courts discretion to decide, based on equitable considerations, to what extent the pre-petition security interest attaches to post-petition proceeds. 11 U.S.C. § 552(b)(1); see Cross Baking Co., Inc., 818 F.2d at 1032–33; Wiegmann, 95 B.R. at 93. As Heins seeks to pursue the Debtor's post-petition property, first as "proceeds" of her pre-petition collateral, or, in the alternative, based on the equities of the case, the Court addresses each provision of § 552(b)(1).

### 1. Burden of Proof Under 11 U.S.C. § 552(b)

As a threshold matter, the Court must first determine which party bears the bur-

---

4. Section 552 of the Code provides, in relevant part, that:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest

created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 522.

den of proof with respect to § 552 issues. At hearing, each party flatly denied bearing that burden, despite being unable to cite any authority for their respective positions. At the conclusion of hearing, the Court directed the parties to file legal memoranda addressing that issue. While both parties did file memoranda, only the Debtor addressed burdens of proof as directed, Heins instead confining her brief to ancillary issues.

■ Admittedly, there is scant bankruptcy court authority on this issue, and the Court's own research did not uncover much more than that offered by the Debtor. The limited authority supports the Debtor's position that a secured party bears the burden of proving what of a debtor's property constitutes collateral. *See Cargocaire Eng'g Corp. v. Gemel Int'l, Inc. (In re Gemel Int'l, Inc.),* 190 B.R. 4, 9–10 (Bankr.D.Mass.1995); *see also Carlson v. W.J. Menefee Constr. Co. (In re Grassridge Indus., Inc.),* 78 B.R. 978, 980 (Bankr.W.D.Mo.1987). Having been presented with no real argument to the contrary, this Court holds that when a secured creditor seeks to enforce a security interest in a debtor's property, the enforcing creditor bears the burden of proving it has a security interest in the property sought pursuant to applicable non-bankruptcy law. Having so held, the Court finds Heins bears the burden of proof as to what of the Debtor's property constitutes her collateral.

### 2. Heins' "Proceeds" Argument

■ Other bankruptcy courts have construed the exception provisions of § 552(b)(1), often laboring to decide the appropriate body of law for defining terms such as "proceeds." 11 U.S.C. § 552(b)(1); *see e.g., Mintz,* 192 B.R. at 318–19; *see also Wiegmann,* 95 B.R. at 92–93; *but see James Cable Partners, LP v. Citibank, NA (In re James Cable Partners, LP),* 141 B.R. 772, 775–76 (Bankr.M.D.Ga.1992); Norton, *Norton Bankruptcy Law and Practice 2d,* § 62:3 n. 10 (1997). Visiting

this issue after my brethren, I have the benefit of their guidance in applying § 552(b)(1). As such, I conclude the approach adopted by Chief Judge Hillman in *In re Mintz,* 192 B.R. 313, 319, is most faithful to the command of the Code, and furthermore most likely to produce reliable results given the nearly universal acceptance of the Uniform Commercial Code in our national jurisprudence, *see Mintz,* 192 B.R. at 318–19 (quoting *Unsecured Creditors' Comm. v. Marepcon Fin. Corp. (In re Bumper Sales),* 907 F.2d 1430, 1437 (4th Cir.1990)).

■ Faced with another creditor's similar argument that post-petition partnership distributions subject to a pre-petition security interest constituted "proceeds" under Massachusetts law, Judge Hillman's analysis focused on the dispositive nature of transactions typically creating "proceeds" under § 9–306 of Chapter 106 of the Massachusetts General Laws. *Mintz,* 192 B.R. at 319. Noting the existence of "proceeds," as defined by Massachusetts law, only arises in the wake of the debtor selling, exchanging, or otherwise disposing of collateral with a resultant conversion of that collateral, the court there found "proceeds" could not exist under state law, and thus the Code, because the debtor's distribution rights remained unchanged from their pre-petition form. *Mintz,* 192 B.R. at 319 (citing *Federal Deposit Ins. Corp. v. Hastie (In re Hastie),* 2 F.3d 1042, 1046 (10th Cir.1993)). Finding no disposition of the collateral occurred to create "proceeds," the *Mintz* court concluded § 552(a) terminated the creditor's security interest at least as to post-petition partnership distributions. Thus it is apparent to this Court that a secured creditor's showing of a conversion of pre-petition collateral is part and parcel of that creditor's successful reliance on § 552(b)(1) to attach post-petition "proceeds."

Applying this principle to the facts at hand, Heins has not made the requisite showing allowing her to reach the Debtor's post-petition property. A chronological

discussion of the evidence illustrates the reason for the Court's conclusion. To begin, the UCC–1 lists Heins' oldest collateral, comprised of virtually all the Debtor's professional equipment existing on the UCC–1 Filing Date. Heins next introduced credible evidence the Debtor acquired a computer tower with veterinarian software pre-petition which, as an "addition" to his equipment, also became collateral covered by the UCC–1. Mass. Gen. Laws ch. 106, § 9–109(2) (defining "equipment" as a class of "goods" used or bought primarily for business). Heins' next catalog of her collateral is the post-petition Appraisal made to identify and value allegedly collateralized property. Notwithstanding that the Appraisal does tend to prove the Debtor's continued ownership of original UCC–1 collateral, the Appraisal does not prove the Debtor obtained property listed in the Appraisal but not shown on the UCC–1 by selling, exchanging, or otherwise disposing of other collateral on the UCC–1. *Mintz*, 192 B.R. at 319. In fact, Heins presented no evidence at all of any transactions involving conversion of pre-petition collateral. *Id.* Absent such evidence, the Court cannot, as a matter of law, find the Debtor's post-petition property is "proceeds" under § 552(b)(1). As such, § 552(b)(1) does not affect attachment of Heins' security interest to the Debtor's post-petition property as "proceeds" of her pre-petition collateral.

### 3. Heins' "Equities of the Case" Argument

■ Heins also proposes that § 552(b)(1) grants the Court discretion, "based on the equities of the case," to grant her a replacement lien on the Debtor's post-petition property. 11 U.S.C. § 552(b)(1). Even were the Court inclined to do so based on the Debtor's conduct, which it might well have considered, the Court is not persuaded to read § 552(b)(1) as Heins urges in light of the First Circuit's discussion of § 552(b)(1) in *Cross Baking Co., Inc.*, 818 F.2d 1027. In that case, a secured creditor sought to reach collection proceeds of the debtor's post-petition receivables when the creditor asserted the debtor used the creditor's cash collateral without authority. *Cross Baking, Inc.*, 818 F.2d at 1029. Similar to this case, the creditor advanced the same "proceeds" and equities arguments Heins advances here today. There, the Court of Appeals observed the creditor persuaded the lower courts that § 552(b)(1) authorized such an exercise of equity to create an involuntary security interest in post-petition property otherwise invalid under the Code. *Id.* at 1032. On review, though, the court noted § 552(b)(1) "is not a general grant of equitable power permitting a court to correct a secured creditor's errors by recognizing a security interest in non-proceeds." *Id.* at 1033 (citing Lawrence P. King, *et al.*, 4 *Collier on Bankruptcy*, ¶ 552.01 at 552–53 n. 3 (15th ed.1987)).

Looking for guidance on the scope of equity relief available under § 552(b)(1), the First Circuit found the legislative history suggested a very narrow application of the equity provision of § 552(b)(1), circumscribing, in fact, the secured creditor's interest in the collateral when preserving that security interest prejudiced general unsecured creditors. *Id.* at 1033. Concluding Congress intended the statutory equity provision to protect unsecured creditors by preventing windfall benefits to secured creditors, the First Circuit held that a finding that the secured party's interest extended to "proceeds" or the like is tantamount to a condition precedent before considering entering an equitable order under § 552(b)(1). In light of the clear opinion of the authoritative court in this circuit, this Court reads § 552(b)(1) as allowing attachment of certain pre-petition security interests to certain post-petition property, despite § 552(a), but the Court also reads the equity language of that statute only as a means to limit the extent, i.e., the value, of any exceptional attachment allowed under § 552(b)(1). As a result, the Court finds Heins, as a secured creditor, cannot invoke the equity clause of

§ 552(b)(1) because Congress intended that clause to diminish such security interests under certain circumstances.

### B. Heins' Collateral

Having found Heins cannot invoke § 552(b)(1) in the face of the Debtor's § 552(a) defense, the Court concludes by identifying, based on the limited useful evidence, what remains of Heins' collateral ("the Collateral"). Having devoted substantial energy to navigating the evidentiary labyrinth presented, the Court defines the Collateral by first establishing a universe of original collateral, adding to that universe as appropriate, and finally subtracting from it as is consistent with the law and proof in the case. In the end, Heins has relief from the automatic stay to exercise any and all of her state law rights with regard to the Collateral, wherever located.

First, the Court finds the Collateral is comprised of any and all property conceived of and described in the UCC–1 ("the Listed Property"). The Court finds the Debtor continued to own and possess the Listed Property post-petition because most, if not all the Listed Property appeared on the post-petition Appraisal. The Court also finds the Debtor admitted relocating some of the Listed Property to Central Street.[5] Second, in addition to the Listed Property, the Court credits Heins' evidence that the Debtor acquired a computer system with veterinary profession-specific software installed thereon (collectively "the Computer System") prior to the Petition Date. Therefore, the Collateral includes the Listed Property *and* the Computer System. Lastly, the Court excludes property about which the Debtor introduced rebuttal evidence showing he acquired that property post-petition free of Heins' security interest by operation of § 552(a). That evidence consisted of a purchase receipt from a trade vendor. The receipt did not specify what the Debtor purchased, but the Debtor testified he purchased stainless steel animal cages and a surgery table ("the Equipment"). As § 552(a) severed her security interest in the Equipment, Heins may not pursue the Equipment. The Court credits the Debtor's testimony, and he is bound by those statements made to this Court under oath.

### V. Conclusion

For the reasons set forth herein, the Court hereby ALLOWS Heins' Motion for Summary Judgment requesting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The Debtor's Motion for Summary Judgment is hereby DENIED. The Court ORDERS that the relief granted herein is limited to the Collateral as defined above, in the hands of any party and wherever located. The Court further ORDERS Heins to credit the Debtor in the amount of $3,500.00 for her previous sale of the collateral the Debtor surrendered. Lastly, because of the unique circumstances in this case, the Court hereby ORDERS that the Debtor shall have thirty (30) days in which to satisfy the secured creditor or otherwise surrender the Collateral thereafter on demand of the secured creditor.

SO ORDERED.

---

5. The Court also looked to the Debtor's schedules to decide what property he had on the Petition Date, as they might have shown a diminution in collateral prior to the Petition Date. The Debtor, though, was vague in his descriptions, and the Court must draw all inferences therefrom in Heins' favor. *See Addison v. Reavis*, 158 B.R. 53, 59 (E.D.Va. 1993); *In the Matter of Sherbahn*, 170 B.R. 137, 137 (Bankr.N.D.Ind.1994).